UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| SHIRLEY AGAN,<br>*Plaintiff,* | § <br> § <br> § <br> § | CIVIL ACTION NO.<br><br>5:21-cv-00150-RWS |
| v. | § <br> § <br> § | JURY TRIAL DEMANDED |
| REGION 8 EDUCATION SERVICE<br>CENTER; DR. DAVID FITTS, IN HIS<br>OFFICIAL CAPACITY AS EXECUTIVE<br>DIRECTOR OF REGION 8 EDUCATION<br>SERVICE CENTER; MS. JANIS<br>MCCLURE, IN HER OFFICIAL<br>CAPACITY AS DIRECTOR OF SPECIAL<br>SERVICES OF REGION 8 EDUCATION<br>SERVICE CENTER; MS. MIKKI PERRY,<br>IN HER OFFICIAL CAPACITY AS<br>DIRECTOR OF SPECIAL SERVICES OF<br>REGION 8 EDUCATION SERVICE<br>CENTER; DR. RICHELE LANGLEY, IN<br>HER OFFICIAL CAPACITY AS DEPUTY<br>EXECUTIVE DIRECTOR; MS. MICHELE<br>LEACH IN HER OFFICIAL CAPACITY<br>AS CHIEF FINANCE & OPERATIONS<br>OFFICER,<br>    *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |

**PLAINTIFF SHIRLEY AGAN'S FIRST AMENDED COMPLAINT**

## I.   INTRODUCTION

1.     Shirley Agan has worked with Region 8 Education Service Center ("Region 8") as a behavior and classroom-management consultant for over seventeen years. Ms. Agan works with school districts to train and implement classroom behavior management strategies, often advocating on behalf of students with disabilities. For twenty-four years, Ms. Agan has suffered from multiple sclerosis ("MS"), fibromyalgia, and chronic migraines, each of which affects her mobility. Ms. Agan experiences muscle weakness, fatigue, chronic pain, and diminished

coordination as a result of her conditions. Ms. Agan uses her service dog, Daisy, to assist with mobility.

2.      Despite Ms. Agan's dedicated role as an advocate, her employer Region 8 has ignored Ms. Agan's own need for accommodations. Region 8 has banned Ms. Agan's service dog, Daisy, from the premises, forcing Ms. Agan to operate in the workplace with limited mobility, under constant stress, and while suffering from chronic pain. Ms. Agan relies on Daisy for mobility and assistance completing day-to-day tasks. Region 8 has stripped Ms. Agan of access to Daisy and has so far refused to participate in the process of finding an alternative solution to accommodate Ms. Agan's disability.

3.      This is an action for an award of damages, declaratory and injunctive relief, and other relief on behalf of Plaintiff Shirley Agan, an employee of Defendant, Region 8, who has been harmed by the discriminatory employment practices of Region 8 and its officials Dr. David Fitts, Ms. Janis McClure, Ms. Mikki Perry, Dr. Richele Langley, and Michele Leach (collectively, "Defendants").

4.      This action arises under the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Titles I and II of the Americans with Disabilities Act as amended, 42 U.S.C. § 12101, *et seq.* ("ADA").

## II.      PARTIES

5.      Plaintiff Shirley Agan is an adult resident of Titus County, TX.

6.      Region 8 Service Center is an education service center servicing forty-six rural school districts in the state of Texas (https://www.reg8.net/districts-we-serve). Region 8 is an employer under 42 U.S.C. § 2000 and a public entity under 42 U.S.C. § 12131(1).

7.      Dr. David Fitts is the Executive Director for Region 8. He is sued in his official capacity.

8.      Ms. Janis McClure is the Director of Special Services at Region 8. She is sued in her official capacity.

9.      Ms. Mikki Perry is the Director of Special Services at Region 8. She is sued in her official capacity.

10.     Dr. Richele Langley is the Deputy Executive Director at Region 8. She is sued in her official capacity.

11.     Ms. Michele Leach is the Chief Finance & Operations Officer at Region 8. She is sued in her official capacity.

## III.    JURISDICTION AND VENUE

12.     This Court has jurisdiction of this case under 28 U.S.C. § 2201-22, 28 U.S.C. §§ 1331 and 1343(a)(4) based upon claims brought under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* and for claims brought under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

13.     Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that more than one Defendant and Plaintiff reside in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## IV.    STATEMENT OF FACTS

### A.      Ms. Agan's Employment with Region 8

14.     Ms. Agan began her employment with Region 8 on June 1, 2004. Ms. Agan is a behavior and classroom-management consultant and is a part of the Special Services team. She travels to school districts and works with children with disabilities, teachers, and other staff members to train and implement classroom behavior management strategies, trauma informed care, and multi-tiered systems of support.

3

B.     **Ms. Agan's Disability and Use of a Service Animal**

15.     Ms. Agan suffers from MS, fibromyalgia, and chronic migraines, conditions which substantially limit one or more major life activities. She was diagnosed with these medical conditions by a medical doctor twenty-four years ago, and she has been receiving treatment for these medical conditions since. Ms. Agan's medical conditions are exhibited by fatigue, muscle weakness, chronic pain, difficulty walking, and diminished coordination, which cause her to experience multiple mobility issues.

16.     Ms. Agan is a person with a disability as defined in the ADA. She is also a person with a disability under Section 504.

17.     Ms. Agan's service dog, Daisy, has been individually trained to do work and perform tasks to assist Ms. Agan with her disability. Daisy was trained and certified as a service animal by Training2Lead. Daisy has served as Ms. Agan's service animal since June 2016. Daisy is a mixed breed labradoodle and weighs approximately 80–85 pounds. Daisy is trained to assist Ms. Agan with her disability by providing stability while she is walking and alerting her (by barking) to the nearby presence of quickly moving people or objects. This is a way for Daisy to communicate to Ms. Agan that someone or something may knock her down. Daisy is trained to walk beside Ms. Agan while wearing a harness, which allows Ms. Agan to lean upon Daisy for support and stability. All of these tasks help prevent falls and injuries. Daisy typically lies quietly by Ms. Agan's side when Ms. Agan and Daisy are not walking or moving.

18.     Daisy is a "service animal" under the provisions of the ADA.

C.     **Region 8's Discriminatory Conduct**

        i.     **Region 8 Continues to Deny Ms. Agan Access to Her Service Animal**

19.     On Tuesday, October 23, 2018, Ms. Agan was giving a presentation to a group of teachers and administrators as part of her job responsibilities at the Region 8 Education Service

Center located at 4845 US HWY 271 N. in Pittsburg, Texas. She was accompanied by her service dog Daisy. Daisy was on her leash and was lying quietly by Ms. Agan's feet behind the podium, as she typically does. During the presentation, some attendees noticed Daisy behind the podium and asked Ms. Agan about Daisy and her role. Ms. Agan explained how Daisy assists her with mobility and alerts her when people or objects come towards her quickly or from behind, in an effort to prevent her from tripping or otherwise losing her balance.

20.     Later that morning, as Ms. Agan continued her group presentation, one of the attendees entered the room late. The attendee entered through the door behind Ms. Agan and walked quickly to her chair. Daisy barked, alerting Ms. Agan that the individual was behind her and moving quickly. The individual stopped moving and said, "I'm sorry, Daisy. I know better than to sneak up on Shirley." One of the other participants remarked to Ms. Agan, "that is what you were talking about, isn't it?" These comments demonstrate the group participants' understanding that Daisy's bark upon the attendee's entrance was part of her trained response to assist Ms. Agan with her disabilities.

21.     Two days later, on Thursday, October 25, 2018, Dr. David Fitts and Janis McClure, Ms. Agan's supervisors, visited Ms. Agan's office and informed Ms. Agan that Daisy would no longer be allowed to accompany Ms. Agan on the premises. Defendants explained that they had been told (but did not specify by whom) that Daisy barked and was aggressive towards participants at the presentation held on Tuesday, October 23, 2018. They told Ms. Agan that Daisy needed additional training to prevent her from barking when people approached Ms. Agan from behind. Dr. Fitts and Ms. McClure stated that if Ms. Agan provided documentation that Daisy completed this training, Daisy would be allowed to return to work with Ms. Agan.

5

22.     Ms. Agan sent a follow-up email on Friday, October 26, 2018, to ask for clarification regarding the reasons why Daisy had been banned from the workplace and to ask for more detail regarding the conditions of Daisy's return. Defendants stated that they would follow up with Ms. Agan in "the next couple of days," but failed to do so within that timeframe.

23.     In reliance on Defendants' representations that Daisy could return for a fourteen-day trial period if she received additional training, Ms. Agan paid for the additional training for Daisy.

24.     At the outset, Ms. Agan asked if Daisy's additional training could be completed on Region 8 property so that Daisy would understand the context of the training, as well as to prevent Ms. Agan from unnecessarily missing work to attend the requested off-site training, but Defendants refused to approve on-site training. As a result, Ms. Agan and Daisy completed the additional training requested by Region 8 off-site, with Texas K-9 Rehab. Ms. Agan then provided Defendants with written proof that she and Daisy had completed the additional training they requested.

25.     Once Daisy's additional training was completed, Ms. Agan returned to work with Daisy for what Ms. Agan understood to be a mutually agreed-upon fourteen-day trial period. After only two days, Defendants again required Ms. Agan to remove Daisy, stating that they still had concerns and calling Daisy's retraining "inadequate" without specifying why or how.

26.     Federal and state laws require that Defendants allow Ms. Agan to bring her service animal to work without "added conditions," including the "additional training" requested by Defendants following the October 23, 2018 incident and October 25, 2018 meeting. While federal and state laws preclude Defendants' discriminatory activities, including those exhibited on October 25, 2018, when Dr. David Fitts and Janis McClure informed Ms. Agan that Daisy would

not be allowed on the premises unless she was given additional training, Ms. Agan nevertheless tried to appease her employer by investing significant time and monetary resources to secure the requested additional training for Daisy. Yet despite meeting the "conditions" imposed by Defendants, they continue to violate the law by preventing Ms. Agan from having her service animal Daisy by her side while she performs her work activities during normal work hours.

27.     Defendants' actions have not only prevented Daisy from assisting Ms. Agan while at work, but have also caused Ms. Agan additional physical strain outside of work. Specifically, without the physical support normally provided by Daisy throughout the day, Ms. Agan has experienced more fatigue than normal and she has fallen several times since Defendants banned Daisy from her workplace. As a result of one of her falls, Ms. Agan's head was split open, and she needed four staples to close the laceration. Region 8 and its officials—at a minimum—were negligent in their acts, resulting in bodily injury to Ms. Agan.

28.     In addition to the physical injuries Ms. Agan has suffered since Daisy was banned from her workplace, Ms. Agan and Daisy have experienced emotional distress caused by their forced separation. Throughout the course of this ordeal, Daisy's trainers and veterinarian have maintained that Daisy is well-trained, friendly, and under control.

### ii.     Region 8 Continues to Deny Ms. Agan Reasonable Office and Facility Accommodations

29.     Despite implementing (illegal) added conditions regarding additional training for Daisy, which Ms. Agan complied with, Defendants refuse to allow Daisy to accompany Ms. Agan at her workplace and have refused to accommodate Ms. Agan to allow her to fulfill her work obligations outside of the workplace.

30.     For example, Ms. Agan requested permission to work from home two days a week in order to comply with Defendants' training requirements for Daisy and to attend to her own

physical therapy related to her longstanding disabilities, which have been exacerbated by her recent falls. Defendants refused to grant permission for Ms. Agan to work from home without a doctor's note. When Ms. Agan provided a doctor's note, Defendants again denied Ms. Agan's request, stating that the doctor's note did not adequately explain why Ms. Agan *needed* to work from home.

31.     Additionally, Defendants worsened Ms. Agan's workplace conditions since the start of this ongoing ordeal. On October 22, 2018, Ms. Agan's office was located on the fourth floor of the Region 8 building. The office was in close proximity to the elevator and to the women's restroom, and Ms. Agan had worked out of that workspace since September 2017. Ms. Agan's original workspace was large enough to accommodate Ms. Agan and Daisy, was easy to navigate, and had adequate distance between pieces of office furniture.

32.     As of June 10, 2019, Defendants relocated Ms. Agan's department and her office to the first floor of the building. There are two doors that can be used to access this new office, both of which have numerous obstacles between the door and the actual office. For example, at one point, Ms. Agan had to navigate through two secretaries' office spaces to reach her office from the door that is closest to the area in which Ms. Agan parks. This new office space is also further from the women's restroom and elevators.

33.     Ms. Agan's first-floor office is also much smaller than her original office on the fourth floor. The smaller size of her new office has made it difficult to find a furniture arrangement suitable for Ms. Agan's mobility issues. Ms. Agan has requested a different, more suitable office space, one also located on the first floor with the rest of her department, but Defendants refused. Defendants have also refused to allow Ms. Agan to work from home.

34.     Defendants also failed to comply with accessibility requirements for government buildings, including a failure to provide curb cuts and accessible doors for restrooms.  As a result of Defendants' non-compliant facilities, Ms. Agan has suffered an inability to access services, programs, and/or activities, as well as physical injuries, falls, and mental and emotional distress.

35.     Rather than provide reasonable accommodations, Defendants have questioned the nature and severity of Ms. Agan's disability. For example, Defendants have implied that since Ms. Agan participated in an event intended to benefit those suffering from MS, Ms. Agan's disability must not be as bad as she claims. Had Defendants asked, they would have learned that Ms. Agan— using a specially modified recumbent tricycle—participated as best she could in only a portion of a benefit bike ride. The proceeds of this ride benefit a foundation (the National Multiple Sclerosis Society) searching for a cure for MS.  In order to be considered a "participant," one only had to begin the race. Ms. Agan used her modified tricycle to begin the race, but unfortunately was unable to complete the event and eventually called for an assistance vehicle to pick her up and take her to the last stop before the finish line. Additionally, Ms. Agan has documentation from her physical therapist explaining the importance of physical activity, such as this ride, to Ms. Agan's physical therapy.

36.     Despite Defendants' pattern of intentional discrimination, they have dragged out attempts to resolve this matter by stating throughout this ordeal that they are trying "in good faith" to accommodate Ms. Agan, but doing nothing. In reality, Defendants are stringing Ms. Agan along, while knowingly and illegally preventing Daisy from accompanying Ms. Agan on its premises or providing otherwise reasonable accommodations and accessible facilities. This ongoing ordeal has caused Ms. Agan to suffer, while Defendants continue to "move the ball" when it comes to

allowing Ms. Agan to resume having her service animal and other reasonable accommodations at her place of employment—as is her legal right.

37.     Since the onset of the COVID-19 pandemic, Defendants did another "about-face," allowing Ms. Agan to work from home. This was critical since Ms. Agan's main prescription medications are immune suppressors, leaving her especially susceptible to contracting the virus and severe complications. This shows Defendants earlier refusals were without merit. And early this year, Defendants sent Ms. Agan a letter stating that she was required to return to the office on January 4, 2021 and ignored her request to continue to work from home.

38.     Defendants continue to discriminate against Ms. Agan based solely on her disability. Their conduct violates both federal and state laws regarding disabilities and the use of service animals. Ms. Agan requests that she be allowed to bring Daisy back to work, that Defendants provide financial assistance for Ms. Agan to obtain and train a new service animal, or that she be allowed to permanently work remotely (i.e., at her home). Defendants' illegal actions have led to Ms. Agan being denied her rights under federal and state laws. Defendants' violation of Ms. Agan's rights and federal and state laws regarding disabilities, accessibility requirements for government facilities, and the use of service animals affect not only Ms. Agan but also anyone with a disability or service animal intending to visit or become employed by Region 8. Based on Defendants' conduct, there is a high likelihood of repetitive illegal actions.

   iii.   **Defendants have excluded Ms. Agan from services, programs and activities offered by Region 8.**

39.     Defendants also provide services and programs on the Region 8 property.

40.     For example, on information and belief, Region 8 rents space to a restaurant located in the Region 8 building. This restaurant is open to the public, including visitors to Region 8.

41.     Ms. Agan has attempted to access the services and programs offered by Region 8 and available at the Region 8 property, including the restaurant.

42.      Defendants' failure to provide curb cuts, ramps, and accessible doors and doorways, Ms. Agan has encountered great difficulty accessing the services offered by Region 8.

43.     These barriers continue to hinder Ms. Agan's ability to access programs and activities offered by Region 8 and the facilities it maintains.

44.     On information and belief, Defendants are aware of these barriers but have failed to remove or meaningfully remedy them.

45.     Ms. Agan intends to continue attempting to access the services and programs offered by Region 8.

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

46.     Plaintiff timely filed a charge of discrimination to challenge the disability discrimination she suffered at the hands of Defendants. The Texas Workforce Commission issued a right to sue letter on August 31, 2021, and the Equal Employment Opportunity Commission issued a right to sue letter on September 30, 2021, authorizing this civil action. All administrative prerequisites and conditions precedent have occurred or been performed.

## VI.     CLAIMS

### COUNT I – AGAINST ALL DEFENDANTS: ONGOING DISCRIMINATION UNDER SECTION 504 OF THE REHABILITATION ACT (29 U.S.C. § 794)

47.     Plaintiff incorporates all of the above numbered paragraphs as though fully set forth herein.

48.     Plaintiff Shirley Agan is a qualified individual who has a disability, multiple sclerosis, and was regarded as having a disability.

49.     Region 8 is a public entity that receives federal funds.

11

50.     Defendants' policies, practices, and procedures—particularly the acts and omissions described herein—violate Plaintiff's rights under Section 504 by intentionally discriminating on the basis of disability.

51.     Defendants' discriminatory actions against Plaintiff, including denying Plaintiff reasonable accommodations for her disability, violate Section 504, which prohibits discrimination on the basis of disability. *See* 29 U.S.C. § 794.

52.     Defendants have violated and continue to violate Section 504 of the Rehabilitation Act and its implementing regulations and/or caused Defendants to violate the regulations and provisions as follows:

53.     Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability.

54.     Defendants are administering a policy that has the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.

55.     Defendants are failing to permit a public entity to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

56.     As a direct result of Defendants' unlawful and intentional discrimination, Ms. Agan sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, the value of certain benefits, loss of future earning power, back pay, and interest due thereon.

57.     As a further direct result of the aforesaid unlawful discriminatory practices engaged in by Defendants, Ms. Agan suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II – AGAINST DR. FITTS, MS. McCLURE, MS. PERRY, DR. LANGLEY, AND MS. LEACH IN THEIR OFFICIAL CAPACITY: ONGOING DISCRIMINATION UNDER TITLE I OF THE ADA

58.     Plaintiff incorporates all of the above numbered paragraphs as though fully set forth herein.

59.     Plaintiff Shirley Agan is a qualified individual who has a disability, multiple sclerosis, and was regarded as having a disability.

60.     Under the ADA, as amended, Plaintiff's disability must be assessed without regard to mitigating measures such as medication or her service dog. Plaintiff's disability interferes with major life activities by causing her severe anxiety and incapacitating depression.

61.     Plaintiff was and is eminently qualified to serve as a behavior and classroom management consultant, but she has been and continues to be denied reasonable accommodations for her disability.

62.     Plaintiff has repeatedly requested reasonable accommodations, and Defendants have continually promised to engage in the accommodation process.

63.     Defendants' denial of reasonable accommodations for Plaintiff's disability violated the ADA, which prohibits discrimination in employment on the basis of disability. *See* 42 U.S.C. § 12112(b). Defendants' conduct of repeatedly requiring more and more training and/or proof of training from Plaintiff, her dog trainer, and physician, coupled by outright denying Plaintiff access to her service animal, and/or other reasonable accommodations caused a breakdown of the ADA's interactive process for reasonable accommodations.

64.     As a direct result of Defendants' unlawful discriminatory employment practices, Ms. Agan sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, the value of certain benefits, loss of future earning power, back pay, and interest due thereon.

13

## COUNT III – AGAINST ALL DEFENDANTS: VIOLATIONS OF
## TITLE II OF THE ADA

65.     Plaintiff incorporates all of the above numbered paragraphs as though fully set forth herein.

66.     Plaintiff Shirley Agan is a qualified individual who has a disability, multiple sclerosis, and was regarded as having a disability.

67.     Region 8 is a public entity that receives federal funds.

68.     Defendants' failure to provide reasonable accommodations and/or reasonably accessible facilities—including failure to provide proper curb cuts in sidewalks, failure to provide accessible doors, and failure to provide clear pathways to doors and exits—violates the ADA, which prohibits public entities from discriminating against individuals with a qualifying disability by denying the benefits of the services, programs, or activities of the public entity. *See* 42 U.S.C. 12132.

69.     As a direct result of Defendants' unlawful discriminatory practices, Ms. Agan sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, the value of certain benefits, loss of future earning power, back pay, and interest due thereon.

70.     As a further direct result of Defendants' aforesaid unlawful discriminatory practices in violation of the ADA, Ms. Agan suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## VII.    RELIEF REQUESTED

Ms. Agan respectfully asks this Court to enter a judgment:

71.     Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the Rehabilitation Act;

14

72.     Enjoining Defendants' discriminatory practices and permanently restraining these violations of law;

73.     Directing Defendants to pay Plaintiff the compensatory damages that she suffered;

74.     Awarding Plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

75.     Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

76.     Awarding Plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

77.     Awarding Plaintiff such other relief, legal or equitable, as may be warranted.

DATED: February 8, 2022                    Respectfully submitted,


                                           /s/John R. Keville
                                           John R. Keville
                                           Texas Bar No. 00794085
                                           Chante B. Westmoreland
                                           Texas Bar No. 24098715
                                           WINSTON & STRAWN LLP
                                           800 Capitol Street, Suite 2400
                                           Houston, TX  77002-2925
                                           Telephone: (713) 651-2600
                                           Facsimile: (713) 651-2700
                                           jkeville@winston.com
                                           cwestmoreland@winston.com

                                           Cicely Reid (Pro Hac Vice forthcoming)
                                           Texas Bar No. 24032993
                                           DISABILITY RIGHTS TEXAS
                                           1500 McGowen Street #100
                                           Houston, TX 77004
                                           Telephone: (713) 974-7691
                                           creid@disabilityrightstx.org

                                           ***Attorneys for Plaintiff Shirley Agan***

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing document was filed electronically pursuant to Local Rule CV-5(a) on this 8th day of February 2022.  Also, pursuant to Local Rule CV-5(d) this document was served via electronic mail on all counsel of record.

/s/ John R. Keville
John R. Keville
